THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JOSHUA JAMES LEE HOWELL,<br><br>Plaintiff,<br><br>vs.<br><br>ANDRE CARRETHERS, DHO; and ALAN SCANLON, TREATMENT SERVICE DIRECTOR,<br><br>Defendants. | CV 20-00064-GF-BMM-JTJ<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Plaintiff Joshua Howell filed an Amended Complaint alleging his constitutional rights were violated when he was removed from the Great Falls Pre-Release Center ("GFPC") and returned to prison for talking to, encouraging, and helping other residents file grievances. (Doc. 9.) Defendants Andre Carrethers and Alan Scanlon have filed a motion to dismiss. (Doc. 14.) Howell did not file a response to the motion but filed a motion for a hearing that includes argument on the motion to dismiss; therefore, the Court will construe that document as his response and consider the motion fully briefed. (Doc. 20.) The motion for a hearing will be denied. The motion to dismiss should be granted.

I.      Standard on Motion to Dismiss

1

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must accept as true the plaintiff's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. 544).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

II. Analysis

Defendants' brief addresses each defendant in turn.

A. Carrethers

Defendants' approach in their briefs is that Scanlon and Carrethers are not state actors, and therefore, whatever they may have done could not have occurred "under color of state law," as required by 42 U.S.C. § 1983. (Doc. 15 at 6.) Defendants assert that GFPC is a private entity with a contract with the Montana Department of Corrections, and therefore, the actions of its employees are not "under color of state law." This position ignores the body of law that holds that under certain circumstances, a private actor can be entwined with the state enough to make it essentially a state actor. "[W]e say that state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State

3

itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S. Ct. 924, 930, 148 L. Ed. 2d 807 (2001) (internal citation and quotations omitted.)

The Supreme Court has held that private action can be considered "under color of state law" under a variety of circumstances, including

> 'when it results from the State's exercise of "coercive power,"…when the State provides "significant encouragement, either overt or covert," or when a private actor operates as a "willful participant in joint activity with the State or its agents". We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," when it has been delegated a public function by the State, when it is "entwined with governmental policies," or when government is "entwined in [its] management or control[.]"

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (internal citations omitted). The situation of a Montana pre-release center is analogous to more than one of the situations outlined above. At the very least, a pre-release center performs a public function for the state, i.e., provides secure residences for sentenced state prisoners. Furthermore, this public function, how to house sentenced prisoners, is a result of governmental policy, and the government is entwined in the management of the residents, by setting the terms by which they are allowed to be placed in these facilities.

In addition, the Montana Department of Corrections has the statutory obligation to:

> "contract with private, nonprofit Montana corporations or, pursuant to the Montana Community Corrections Act, with community corrections facilities or programs or local or tribal governments to establish and maintain:
>
> (i) prerelease centers for purposes of preparing inmates of a Montana prison who are approaching parole eligibility or discharge for release into the community, providing an alternative placement for offenders who have violated parole or probation, and providing a sentencing option for felony offenders pursuant to 46-18-201. The centers shall provide a less restrictive environment than the prison while maintaining adequate security. The centers must be operated in coordination with other department correctional programs. […]."

Mont. Code Ann. § 53-1-203(c). Finally, GFPC is linked on the Department of Corrections web page, as though it is a part of the Department. There can be no doubt of the "close nexus" between the State and GFPC.

On the whole, then, the assertion that Carrethers' actions were not taken under color of state law is unavailing. However, Defendants' additional point regarding the allegations against Carrethers in the Amended Complaint is valid. Howell asserts that Carrethers "had him removed" from the pre-release and sent to prison, as retaliation for talking with others about how to grieve being charged full rent during the Covid pandemic. (Doc. 9 at 5.) However, Howell simply cannot state a claim for his classification or placement by the D.O.C. "[A] prisoner has no constitutional right to a particular classification status." In *Moody v. Daggett,* 429 U.S. 78 (1976), the Supreme Court, in a footnote, expressly rejected a claim that "prisoner classification and eligibility for rehabilitative programs in the federal system" invoked due process protections. 429 U.S. at 88 n. 9, 97 S.Ct. at 279.

*Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987). The same goes for any reading of the Fourteenth Amendment. *Id.*, at 1318 (9th Cir. 1987). The Due Process Clause does not grant prisoners a liberty interest in good-time credits, *see Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); in remaining in general population, *see Sandin v, Conner*, 515 U.S. 472, 485–86 (1995); in not losing privileges, *Baxter v. Palmigiano*, 425 U.S. 308, 323 (1976); or in staying at a particular institution, *see Meachum v. Fano*, 427 U.S. 215, 225–27 (1976).

Nor does Howell have a right under Montana law to a particular classification. *Quigg v. Slaughter*, 2007 MT 76, ¶ 35, 336 Mont. 474, 485, 154 P.3d 1217, 1225. Howell's commitment to the D.O.C. for his sentence gave the D.O.C. the authority to make its placement decisions based on its own criteria. Mont. Code Ann. § 46-18-201(3). Howell alleges no procedural defects with his hearing; he simply disagrees with the conclusion the hearing reached regarding his placement. Therefore, both factually and legally from the face of the complaint, it is clear that Howell cannot state a claim for relief on the facts he has alleged. The motion to dismiss should be granted.

B. Scanlon

Defendants' brief is correct regarding Scanlon. (Doc. 15 at 12 – 15.) This Court's prior order detailed the information that was necessary for an allegation against a superior to state a claim (Doc. 7 at 10 – 12), and Howell has simply failed

to carry his burden. The allegations must link the actions or omissions of each named defendant to a violation of his rights. *Iqbal*, 556 U.S. at 676B77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009). There are no allegations regarding Scanlon's behavior, other than the unadorned assertion that he failed to respond to grievances. Howell's claim is that he was transferred improperly to prison, not that the failure to respond to grievances violated his constitutional rights. (In any event, a prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993).) For the reasons stated in this Court's prior order, and reiterated in Defendants' brief, Howell has failed to state a claim against Scanlon; the motion to dismiss should be granted as to him.

Finally, Plaintiff has alleged a number of Montana state law claims. (Doc. 9 at 4.) Because this Court should dismiss the federal claims, it should also decline to exercise its supplemental jurisdiction over Howell's state law claims under 28 U.S.C. § 1367.

In light of the foregoing, the Court issues the following:

## ORDER

1. Howell's motion for a hearing (Doc. 20) is DENIED.

2. At all times during the pendency of this action, Mr. Howell must immediately advise the Court and opposing counsel of any change of address and its effective date. Failure to file a Notice of Change of Address may result in the dismissal of the action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

## RECOMMENDATIONS

1. Plaintiff's Amended Complaint should be dismissed.

2. The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Howell may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) thereof.[1] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

---

[1] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Mr. Howell is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 25th day of May, 2021.

John Johnston
United States Magistrate Judge